229 P.2d 977

**COPPEDGE v. LEISER.**

No. 7710.

Supreme Court of Idaho.

April 7, 1951.

Delana & Delana, Boise, for appellant.

Gigray & Boyd, Caldwell, for respondent.

250

TAYLOR, Justice.

On November 19, 1949, plaintiff (respondent) and defendant (appellant) entered into the following contract for the sale by plaintiff to defendant of an automobile sales agency, repair and service shop, at Caldwell:

"Agreement        19 Nov. 49
"Between W. B. Coppedge Caldwell Idaho party of the 1st part and Bruce C. Leiser Boise Idaho party of the 2nd part coving sale of A & B Motor Co Caldwell Idaho.

"Party of the 1st part herby agrees, to sell to the party of 2nd part all Service Shop Equipment, Auto Parts & Accessories and Supplies for the sum of $11142.00 (as listed on Inventory list of 69 sheets.)

"The above includes in addition to the items named unloading and servicing of two autos presently on hand.

"The party of the 2nd part agrees to pay taxes for Dec 1949 in the amount of 31.25.

"The party of the 2nd part further agrees to pay $1000.00 the 19th of Nov 1949 and 8000.00 the 21st of Nov 1949, the balance remaining due on the deal to the party of the 1st part is $2142.00 to be paid by the party of the 2nd part in installments monthly of 400.00 a month plus interest at the rate of 5% per annum.

"The first payment due the 10th of Jan 1950 and subsequent payments to be made on the same date each month thereafter.

"The balance due above named in the amount of 2142.00 to be secured by mortgage on the following items of shop equipment namely—

"The party of the 1st part agrees to take over accountability from the Pacific Finance Corp the new Hudson Auto Car Serial as. follow—491155154—491147367 Model 1949 and one 500 Series 1950 model

"The party of the 2nd part agrees to allow space in the shop and use of necessary equipment by the party of the 1st part in the repair of a 1941 Mercury, 1942 Hudson, 1947 Packard, 1946 Pontiac; 1947 Hudon all labor and material used or expended as above indicated to be paid for by the party of the 1st part.

"The party of the 1st part will transfer present lease of the premises to the party of the 2nd part, payment of rent by the party of the 2nd part to the owner to begin 1 Dec 1949 in the amount of 335.00

monthly in advance as per the terms of the present lease.

"It is further agreed that $2000.00 of the original payment to the party of the 1st part covers a 2000.00 deposit on the lease to the owner.

s/ Bruce C. Leiser

s/ W. B. Coppedge

"Witness: A. M. Barrie."

November 19, 1949, which was Saturday, defendant gave plaintiff his check for $1000.00 and assumed control of the business. On Monday, the 21st, the parties being busy with other things, the mortgage to secure the balance was not executed, and the $8000.00 payment was not made. On Tuesday, the 22nd, the defendant, becoming dissatisfied with the deal, stopped payment on the $1000.00 check, left the three days' receipts with an employee, and refused to complete the transaction. Plaintiff Coppedge brought this action to recover the $9000.00 then due by the terms of the contract. From a judgment for plaintiff the defendant Leiser appeals.

The defendant pleads; that the lease of the real property where the business was conducted, held by plaintiff as lessee, and which plaintiff by the foregoing contract agreed to transfer to defendant, is a lease for a term of five years, beginning May 10, 1949, with an option to the lessee to purchase the property during the term; that the leasehold is the community property of plaintiff and his wife; that the agreement to transfer it to defendant, not being signed or acknowledged by plaintiff's wife, is void and unenforceable. Responsive to this defense the plaintiff advances two propositions: (first) that the agreement, being to transfer the lease in futuro, is not a conveyance or encumbrance within the ban of the statute, sec. 32–912, I.C., and (second) that the contract is severable and therefore the sale of the personal property can be upheld and will support the judgment independently of the agreement to transfer the lease. Thus arise the controlling issues in the case.

The leasehold is an estate in real property. Since it belongs to the community of plaintiff and his wife he cannot convey or encumber it without her signature and acknowledgment. Intermountain Realty Co. v. Allen, 60 Idaho 228, 90 P.2d 704, 122 A.L.R. 647, Anno. 652. A binding contract to convey or encumber in the future is in itself an encumbrance and the wife must, therefore, join therein. Childs v. Reed, 34 Idaho 450, 202 P. 685; McKinney v. Merritt, 35 Idaho 600, 208 P. 244; Hart v. Turner, 39 Idaho 50, 226 P. 282; Elliott v. Craig, 45 Idaho 15, 260 P. 433; Thomas v. Stevens, 69 Idaho 100, 203 P.2d 597. It follows that the agreement of the plaintiff to transfer the lease is void and plaintiff cannot enforce it against defendant for want of mutuality. Childs v. Reed, Elliott v. Craig, and Thomas v. Stevens, supra.

As to severability, "The primary criterion for determining the question is

the intention of the parties as determined by a fair construction of the terms and provisions of the contract itself, by the subject matter to which it has reference, and by the circumstances of the particular transaction giving rise to the question." 12 Am.Jur., Contracts, sec. 315; 17 C.J.S., Contracts, § 332; Page on Contracts, sec. 2085. Obviously, if the intention is expressly stated in the contract there is no room for construction. Otherwise, the provisions of the contract, the divisibility of the subject matter, and surrounding circumstances, must be considered in determining whether the parties intended the contract to be entire or severable. Spokane Cattle Loan Company v. Crane Creek Sheep Company, 39 Idaho 801, 230 P. 772. The singleness or apportionment of the consideration has been held to be a test of severability. Harshbarger v. Rankin, 50 Idaho 24, 293 P. 327. However, it must be kept in mind that apportionment of consideration, divisibility of subject matter, construction by the parties, and surrounding circumstances, are but tests to be applied, and factors to be considered, in arriving at the intention of the parties. 17 C.J.S., Contracts, §§ 331–336; 12 Am. Jur., Contracts, secs. 315–320; Page on Contracts, secs. 2085–2088.

"A contract may both in its nature and by its terms be severable and yet rendered entire by the intention of the parties. We think that perhaps the best test is whether all of the things, as a whole, are of the essence of the contract. That is, if it appeared that the purpose was to take the whole or none, then the contract would be entire; otherwise, it would be severable. Wooten v. Walters, 110 N.C. 251, 14 S.E. 734, 736. The divisibility of the subject matter, or the apportionment of the consideration, while they are both items to consider in determining whether a contract is entire or severable, are not conclusive." Waddell v. White, 51 Ariz. 526, 78 P.2d 490, 496.

The intention to be bound severably must appear. Otherwise, by enforcing less than the whole, the court imposes upon the parties a contract to which they have not assented, and which in all likelihood they would not have voluntarily made. The courts should not infringe the freedom of contract by construction.

In this case it appears from the contract itself that the parties intended to effect the sale of a going business, which was established in a building suitably designed for that business. The buyer is obligated to the payment of rent to begin December 1st "as per the terms of the present lease." $2000.00 "of the original payment" is specifically designated as consideration for a $2000.00 deposit on the lease theretofore paid to the owner by the lessee. Obviously, if the transfer of the lease was severed from the sale of the personal property, $2000.00 of the "original payment", which plaintiff is seeking to recover in this action, would have to be deducted for failure

of consideration. This $2000.00 item is the only apportionment of the price appearing in the contract. The plaintiff, as lessee, had paid to the lessor $2010.00 in advance as payment of the rental for the last six months of the lease. But, in addition to this consideration, the lease gives to the lessee an option to purchase the property during the term and provides that all advance rental payments made before the exercise of the option are to be applied on the purchase price. From this we conclude that the transfer of the lease was perhaps of greater value to the buyer than the $2000.00 apportionment.

The inventory referred to in the contract contains an itemized list of all merchandise and equipment with a price fixed on each item. This is urged by respondent as an apportionment of the price, to be used in segregating the consideration for the lease from that agreed upon for the personal property. However, as appellant points out, the inventory includes an item of $65.00 for a sign painted on the building, and $800.00 for a partition built and painting done by the plaintiff on the inside. While these items could also be deducted, they do indicate an intention that the buyer should take over and occupy the premises covered by the lease. It is also noted that neither in the contract nor the inventory is any price fixed for the good will of the business, or the relinquishment by the plaintiff of his dealer's agency. It seems the agency contract is not assignable, but

both parties agree that it was to go to the buyer, and this explains the assumption by him of the liability for the new cars described in the contract. The contract also requires the buyer "to allow space in the shop and the use of necessary equipment" to the seller for the repair of five automobiles owned by him. This undoubtedly refers to the shop on the premises covered by the lease. The lease also gives to the lessee the right to use during the full term of the lease "air compressor, hoist, underground tanks, gas pumps and grease gun", on the premises and belonging to the Union Oil Company. No apportionment of price is made for this item. It is further to be noted that the lump sum price finally agreed upon and set out in the contract is $11,142.00, whereas the total of the inventoried items, including the $2000.00 advance rental, is $13,383.55. It would be difficult to determine on what basis of apportionment the parties finally arrived at the price agreed to.

Respondent relies upon the authority of Durant v. Snyder, 65 Idaho 678, 151 P.2d 776. We do not think that case is controlling here. There the action was against the buyer's guarantors to recover the price of merchandise lost to them through an assignment to creditors and the default of the buyer (who apparently had absconded). It was not an action to enforce the contract against the buyer, but rather to recover the value of what the seller

had delivered to the buyer and which could not be restored. The judgment might very well have been sustained on grounds of assumpsit, or equity. Idaho Constitution, Art. 5, secs. 1, 20. Also, in that case the merchandise was sold at inventory entirely separate and independent of the rental agreed to be paid to the seller for the use of the premises; and the seller reserved the right to sell the real property and thus to terminate the lease. This right to terminate the lease was regarded by the court as evidence of an intention to sell the merchandise independently of the use of the premises upon which it was located. In this case the lease expressly provides that it "is given for the purpose of conducting in said premises or place of business a retail automobile store and all other business incidental to a retail automobile store and automobile shop." And this lease is not subject to cancellation. Instead of a showing of an intention of the parties to make a severable contract, we have here an abundant showing of an intention not to make such a contract. Orenstein v. Kahn, 13 Del. Ch. 376, 119 A. 444; Kennedy v. Collins, 250 Ala. 503, 35 So.2d 92; Carr v. Hahn & Carter, 133 Ark. 401, 202 S.W. 685; Linebarger v. Devine, 47 Nev. 67, 214 P. 532, 217 P. 1101; Waddell v. White, 51 Ariz. 526, 78 P.2d 490; Shaw Supply Co., Inc., v. Morgan, 48 Idaho 412, 282 P. 492; Morgan v. Firestone Tire & Rubber Co., 68 Idaho 506, 201 P.2d 976.

Parenthetically and for the record, attention is called to an error in the opinion in Durant v. Snyder, supra, on page 686 of 65 Idaho, where it is stated that the contract in the Harshbarger case contains the provision there quoted. Justice Budge (author of Harshbarger v. Rankin, 50 Idaho 24, page 30, 293 P. 327) took the quotation from 13 C.J. at page 561. No such provision is contained in the contract referred to.

In Warm River Lumber Company v. Rightenour, 67 Idaho 187, 174 P.2d 940, the consideration for the lease of the milling equipment was completely apportioned from the consideration named for the personal services of the lessor. The court called attention to the rule regarding apportionment as a test of severability, but, considering other elements in the case, held that the contract was not severable.

The contract, being entire and not severable and being unenforceable in part, is also unenforceable in whole, and the judgment must, therefore, be reversed.

In view of the conclusion we have reached, it is unnecessary to consider other assignments made. Judgment reversed. Costs to appellant.

GIVENS, C. J., THOMAS and KEETON, JJ., and HUNT, D. J., concur.