In the Matter of UNISERVICES, INC., Debtor.

Arthur A. FAIRBANKS, as Trustee, etc., Petitioner-Appellee,

v.

William H. DUDENHOFFER et al., Respondents-Appellants.

No. 74–1486.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 20, 1975.

Decided May 14, 1975.

Gary A. Goldstein, Baltimore, Md., Douglas Shortridge, Indianapolis, Ind., for respondents-appellants.

Sigmund J. Beck, Marvin L. Hackman, Gordon D. Wishard, Indianapolis, Ind., for petitioner-appellee.

Before FAIRCHILD and MARKEY,* Chief Judges, and STEVENS, Circuit Judge.

MARKEY, Chief Judge.

This is an appeal from the judgment and order of the district court sustaining, with modification, the order of the bankruptcy judge declaring that Dudenhoffer had certain duties enforceable in equity by the trustee, Fairbanks. We affirm.

## Background

On December 8, 1970, Fairbanks was appointed Trustee in Reorganization of a publicly held Delaware corporation, Uniservices, Inc. (Debtor), under Chapter X of the Bankruptcy Act, Crystal Industrial Services, Inc. (Crystal) is a Delaware Corporation wholly owned by Debtor. The business involved is that of providing industrial laundry, uniform rental, shop towel, and dust control services (industrial laundry) in central Indiana.

Dudenhoffer and certain members of his family had sold the assets and business of an Indiana corporation named Crystal Industrial Services Inc. to Debtor in 1966. At the time of the bankruptcy judge's order, Dudenhoffer et al. still held 20.77% of Debtor. Dudenhoffer served as a director, executive vice-president and president of Debtor and of Crystal after the latter was organized to receive the assets sold by Dudenhoffer et al. From August 1, 1966, to December 8, 1970, Dudenhoffer was the full time general manager and chief executive officer of Crystal. When Fairbanks took over as trustee, he continued Dudenhoffer in that employment. On August 31, 1972, Fairbanks terminated Dudenhof-fer's employment. Dudenhoffer does not challenge the bankruptcy judge's finding of good cause for his termination.

No written employment agreement between Dudenhoffer and Crystal, Debtor, or Fairbanks ever existed. Of the five members of the board of directors and executive committee of Debtor, all but Dudenhoffer and Herman Miller had executed employment contracts having covenants not to compete. Miller left Debtor's employ, resigned from the board of directors, and set up a business in Florida which apparently solicited customers and employees from Debtor's Florida subsidiary. At Dudenhoffer's urging, Fairbanks instituted court action in Florida against Miller which resulted in a consent order wherein Miller agreed to refrain from solicitation of customers and employees of Debtor's Florida subsidiary for a specified time.

At the time of his discharge, Dudenhoffer refused, until the matter could be settled by a court, to sign an agreement not to compete with Crystal. On September 25, 1972, Fairbanks petitioned for a declaration of rights in this regard. Whether Dudenhoffer had a duty not to compete with or to solicit customers of Crystal appeared to the bankruptcy judge to require such declaration in aid of a determination of whether a plan of reorganization was possible in the Chapter X proceedings.

After an evidentiary hearing and consideration of the briefs the bankruptcy judge entered the following:

## ORDER

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that:

1. William H. Dudenhoffer has a duty and obligation, which is enforceable in equity by the Trustee or any assignee or successor in interest to the business of Crystal Industrial Services, Inc. not, for a period of two (2) years from and after August 31, 1972, to engage, directly or indirectly, either as

---

* Chief Judge Howard T. Markey of the United States Court of Customs and Patent Appeals is sitting by designation.

a principal, officer, employee or otherwise, in the industrial laundry, uniform, garment, towel or dust control rental business within a radius of seventy-five (75) miles in any direction from a line drawn directly from the City of Indianapolis, Indiana, to the City of Fort Wayne, Indiana, except as an employee of the Trustee or any assignee or successor in interest to the business of Crystal Industrial Services, Inc.

2. William H. Dudenhoffer has a duty and obligation, which is enforceable in equity by the Trustee or any assignee or successor in interest to the business of Crystal Industrial Services, Inc., not, for a period of two (2) years from and after August 31, 1972, directly or indirectly, either as a principal, officer, employee or otherwise, serve or attempt to provide any industrial laundry, uniform, garment, towel or dust control services to any customers of Crystal Industrial Services, Inc., who were customers of Crystal Industrial Services, Inc. on August 31, 1972, except as an employee of the Trustee or any assignee or successor in interest to the business of Crystal Industrial Services, Inc.

3. No injunction will issue at the present time in the absence of evidence that William H. Dudenhoffer has violated or threatens to violate his duties and obligations herein; but the Court will retain jurisdiction of this matter for the purpose of receiving and hearing any subsequent petition or petitions by the Trustee or any assignee or successor in interest to the business of Crystal Industrial Services, Inc. alleging a violation of paragraphs 1 or 2 of this Order, or both.

4. The costs of this proceeding are taxed against the Respondent, the amount of which to be determined at a later date.

ENTERED at Indianapolis, Indiana, this 14 day of June, 1973.

The district court, after a hearing and consideration of the briefs and transcript, found sufficient evidence to sustain the bankruptcy judge's Findings, Conclusions and Order and affirmed them in the order on review. In that order, however, the district court reversed the non-competition portion (par. 1) of the bankruptcy judge's order and instructed that it be re-entered to provide for a non-competition period of no more than one year.

### The Issue

The sole issue before us is the validity of the declaration that Dudenhoffer had a duty to refrain from serving or attempting to serve Crystal's August 31, 1972 customers for two years after that date and a duty to refrain from engaging in the industrial laundry business within the specified geographical area for one year after his August 31, 1972 discharge.

Dudenhoffer's brief repeatedly (and erroneously) stated that he was "enjoined." Apparently he had refrained from competition for the nine month period between his discharge and the date of the bankruptcy judge's order. For that reason, as the order stated, no injunction issued. His election to await a final court declaration of his duty and obligation before competing cannot be equated with an injunction.[1]

### OPINION

■ Determination of the extent and nature of a corporation's property is a required element in the evaluation, by a trustee in bankruptcy, of a proposed

1. Assuming that Dudenhoffer avoided risk by refraining from competition until the district court's order of April 4, 1974, though under no injunction to do so, he was free, as of that date, to compete without risk of violating any declared duty. In view of the count's reduction of the non-competition period, he has been without such risk since August 31, 1973. The order respecting customer solicitation terminated August 31, 1974. Though designated "orders," the actions of the bankruptcy and district judges constituted declarations of rights.

Chapter X reorganization plan. To that end, it is often necessary and proper for a federal court sitting in bankruptcy matters to determine that which constitutes protectible property under state law and to declare property rights accordingly. See, for example, In re Bettinger Corp., 197 F.Supp. 273 (D.Mass. 1961). Our touchstone on review in this case is Indiana law.

In Miller v. Ortman, 235 Ind. 641, 136 N.E.2d 17 (1956), the highest Indiana court stated:

> Public policy is committed to the proposition that a man is free to conduct a lawful business and that the good will of a business, including contracts with its dealers and representatives and *confidential information,* such as names and addresses and requirements of customers, and the advantage acquired through representative contact with the trade in the area of their application, *is a property right* which an owner is entitled to protect. [Footnote omitted and emphasis added.]

That Crystal's customer information constitutes protectible property is underscored by the assignment thereto of independent market values, more fully discussed below. In *Miller,* the court saw such property as protectible by contract and, absent a contract, against conspiracy to appropriate by unlawful acts. Once found protectible, the property may be protected by a court declaration of rights.

Notwithstanding a determination of Crystal's property, we must face here, as we often do, the need to balance competing rights. Dudenhoffer's right to engage in the business in which he had long been active, and to call on customers of his former employer, cannot be lightly disregarded. Nor can the rights of Debtor in its information-type property and its expectations of confidentiality be ignored. Each party's duties and rights must be tempered with consideration of the other's; the final consideration being the public's interest in competition which is both fair and unfettered. The balance of duties and rights which the district court struck herein is reasonable as between the parties and is not oppressive to the public interest.

In an attempt to show that Debtor's rights were given excessive weight, Dudenhoffer challenges the confidentiality of Crystal's customer data on the ground that anyone could learn the customers' identity by surveillance of salesmen on their routes. The obvious cannot be secret or confidential. See Smith v. Dravo Corp., 203 F.2d 369 (7th Cir. 1953). But more than customer identity—more than a mere list of names and addresses—is involved here. The data Crystal maintains extends to particular requirements, preferences, and habits of individual customers. None of those factors could be learned by surveillance. Hence, they could be maintained secret.

Dudenhoffer further contends that certain customer data is not secret because it is generally known in the trade. Although the evidence indicates that some of Crystal's data might be known to competitors, we do not find Crystal's property right, insofar as it may be enforceable against Dudenhoffer, to be effected. Our inquiry is not how others could have acquired the data; but rather, how did Dudenhoffer acquire it? Dudenhoffer gained his knowledge of Crystal's trade data in confidence. Use of information gained through lawful inspection and surveillance cannot be restricted; use of the same information disclosed in confidence may be restricted. See Smith v. Dravo Corp., *supra.* It is immaterial that some of Crystal's competitors may be in legitimate possession of some portion of its secret trade data.

The bankruptcy judge found that Dudenhoffer was estopped by his prior conduct to deny that the trade routes and customer service contracts are trade secrets as to him. We agree. Dudenhoffer and his family sold the assets of Crystal to Debtor with "trade routes, covenants and agreements" val-

ued at $1,500,000. The last annual report that Debtor published prior to reorganization valued "trade names, routes and service contracts" at $1,092,725. As a corporate officer Dudenhoffer treated Crystal's trade data as secret by requiring employees to sign agreements against their disclosure, by emphasizing the need for internal security concerning the data and further by requiring Crystal's prospective purchasers and other subsidiaries of Debtor who were given non-public information to enter agreements not to solicit Crystal's customers for two years. While this action was before the bankruptcy judge, Dudenhoffer urged Fairbanks to challenge Herman Miller's solicitation of Debtor's customers in Florida. Dudenhoffer consistently treated Debtor's trade data as a valuable asset.

From all the above, we conclude that the district court committed no error in protecting Debtor's confidential information by imposing upon Dudenhoffer the duty not to solicit customers of Crystal for the two years following his discharge from Debtor's employ.

The foregoing considerations are based on the duty, which Dudenhoffer owed Debtor, of respecting information received in confidence. It is of no import that Dudenhoffer consistently refused to recognize that duty and refused to agree not to compete and not to solicit Crystal's customers for a limited period. We are in agreement with the statement of the Indiana Supreme Court, made by way of dictum in Westervelt v. National Paper & Supply Co., 154 Ind. 673, 57 N.E. 552 (1900), that:

> He [employee] occupies a confidential relation to appellee [employer], and in such case the law raises an implied contract between them that the employe will not disclose any trade secret imparted to him or discovered by him in the course of his employment. A disclosure of such secrets thus acquired is not only a breach of contract on his part, but is a breach of trust which a court of equity will prevent.

The district court held Dudenhoffer to be bound to an implied, limited covenant not to compete with Crystal and held that covenant as continuing for a reasonable time after his separation. We agree that on the facts of this case, a court sitting in equity may imply such a limited agreement not to compete. Because of his standing in the hierarchy of the corporation, Dudenhoffer was able to and did demand covenants not to compete from employees, which covenants continued for one year after termination of their employment. He refused, when requested, to make such commitment himself. We know of no reason in equity why Dudenhoffer should escape the restriction he imposed on others merely because of his superior corporate position or because of the admittedly justifiable termination of his employment. The extent of the implied covenant imposed by the district court is coincident in scope of time and geographical area with covenants imposed by Dudenhoffer on other employees.

 After concluding that appellant is bound by an implied covenant, the terms of which are definite, we have only to decide whether those terms are reasonable. A restraint on competition must not exceed the legitimate individual interest served by the restraint. Buanno v. Weinraub, 226 Ind. 557, 81 N.E.2d 600 (1948); Grand Union Tea Co. v. Walker, 208 Ind. 245, 195 N.E. 277 (1935); Miller v. Frankfort Bottle Gas, Inc., 136 Ind.App. 456, 202 N.E.2d 395 (1964), and cf. Donahue v. Permacel Tape Corp., 234 Ind. 398, 127 N.E.2d 235 (1955); Struever v. Monitor Coach Co., 294 N.E.2d 654 (Ind.App.1973). Debtor serves customers throughout the area within 75 miles of a line between the cities of Indianapolis and Fort Wayne. The one year period of non-competition is not unreasonable. We note that periods of as long as five years have been held reasonable in Indiana. Miller v. Frankfort Bottle Gas, *supra*.

Accordingly, the decision of the district court is in all respects affirmed.

STEVENS, Circuit Judge (concurring).

For the reasons stated in footnote 1 of Chief Judge Markey's lucid opinion, I think it is unnecessary to express any opinion on the question whether the district court properly held that Dudenhoffer was bound, prior to September 1, 1973, by an implied contract in restraint of trade. I do concur, however, in the holding that Crystal's customer information constituted protectable property.